[Crim. No. 1088.   Second Appellate District, Division Two.—July 21, 1924.]

## THE PEOPLE, Respondent, v. JOHN GIANELLO, Appellant.

[1] CRIMINAL LAW — ROBBERY—AIDING AND ABETTING—KNOWLEDGE—EVIDENCE.—In this prosecution for robbery the evidence was sufficient to justify the jury in finding that the defendant aided and abetted another in committing the robbery and that defendant did so with guilty knowledge.

[2] ID.—AIDING AND ABETTING—KNOWLEDGE—INSTRUCTIONS.—In such prosecution, error cannot be predicated upon the giving of an instruction that "If you believe from the evidence . . . that the defendant feloniously took . . . the property . . . as charged in the information, . . . or aided and abetted and 'assisted any other person or persons to so feloniously take . . . the property as charged in the information, . . . then you should find the defendant guilty," because it omitted language telling the jury that, in order to convict, its members must have found that defendant knowingly and with criminal intent aided, abetted and assisted another person in taking the property which was the subject of the robbery, where the court gave another instruction by which the jury was informed that for one person "to abet another person in the commission of a criminal offense, simply means, to knowingly and with criminal intent, aid, promote, encourage or instigate, by act or counsel, or both act and counsel, the commission of such criminal offense."

---

(1) 34 Cyc., p. 1808.    (2) 16 C. J., p. 1053, sec. 2495.

1. See 7 Cal. Jur. 888.
2. See 8 Cal. Jur. 628; 2 R. C. L. 256; 14 R. C. L. 812.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order denying a new trial.
J. O. Moncur, Judge Presiding.   Affirmed.

The facts are stated in the opinion of the court.

S. S. Hahn, John L. Richardson and T. F. Parke for Ap-
pellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy
Attorney-General, and John L. Flynn for Respondent.

WORKS, J.—One Jesse Taylor "held up" one Clark at
about noon of a certain day. Clark was at the time in
charge of a "store" which was connected with a certain
creamery in Huntington Park, and Taylor took money and
other personal property from the place. Defendant in this
action was informed against as a principal in the perpetra-
tion of the robbery actually committed by Taylor under the
statute which fastens guilt upon one who aids and abets
another in the commission of a public offense. Defendant
was convicted and he appeals from the judgment and from
the order of the trial court denying his motion for a new
trial.

[1] Appellant contends that there was no evidence to show
that he aided and abetted Taylor in the perpetration of the
robbery. Taking the evidence in the order in which it went
to the jury, various of the witnesses testified as follows: Mrs.
Marie E. Douglass said that she went to the creamery, as a
customer, around noon; that she then saw Gianello sitting
in an old Ford car near the creamery; that she drove past
the car in which he sat and parked her car in the rear of
it; that she alighted from her car and on looking toward the
Ford she observed that Gianello had turned and was looking
at her and that he continued to look at her; that she then
walked toward the door of the creamery and Taylor was
standing there with a wire basket of eggs and butter and
appeared to be looking at Gianello; that she went into the
creamery, where she saw Clark, and that she remained inside
a minute or two; that when she came out the car in which
Gianello had been waiting was no longer there and that she
saw neither Gianello nor Taylor. Clark testified that Taylor

entered the creamery store, covered him with a "gun," took money from the cash register, which he forced Clark to open, opened a "case" and took out a tray of butter and eggs and left the place, and that he met Mrs. Douglass at the door as he departed. Charles H. Bevan, who owned a place of business about one thousand feet from the creamery, testified that he saw Gianello in an automobile standing back of Bevan's store at about 11:30 on the morning of the day on which Taylor robbed the creamery; that Taylor was at the time in the yard back of the store among certain barrels, and that Bevan then had a conversation with his son, Charles H. Bevan, Jr., who was in the store at the time. Bevan, Jr., testified that he saw Gianello at the time and place mentioned by his father in an old dilapidated Ford car which had its top down; that he then had a conversation with his father and went into the yard and talked with Taylor; that the latter was then about fifty feet from the Ford in which Gianello was seated and that the latter was near enough to hear the conversation between him and Taylor; that he asked Taylor what he was doing stealing the barrels; that Taylor said "he had been there before, and the defendant here told him to put them back, but he had already taken barrels before, because he told me he was a garbage collector"; that Taylor then started to throw a barrel at him, but that Gianello made him stop and Taylor threw the barrel on the ground instead; that Gianello told Bevan that he was the garbage collector and had been there before and got barrels, and that after the conversation with the men Taylor got into the Ford with Gianello and the two drove away. The wife of Clark testified that she went to the creamery store about 12 o'clock on the day of the robbery; that when she got within about fifty yards of the place she saw a man run out of the store with a tray of eggs and some butter in his arm and that he was in a terrible hurry; that he jumped on the running-board of a car that was not in front of the store, but which stood about two machine-lengths from the entrance; that the car was a Ford which had its top down and was a rickety, old-looking machine and had no paint on it; that as the man jumped on the running-board of the car it started off, and that he hadn't gotten into the machine when she last saw him. Herman Bossard, a constable and the officer who arrested Gianello, testified

that he saw the latter two days after the robbery at a ranch owned by Gianello, a mile and a half distant from Huntington Park; that Taylor and a man named Beal were also present at the time; that there was then on the ranch an old Ford touring car in very poor condition and with paint in poor condition, and that he saw broken eggs and eggshells on the right-hand side of the floor boards of the front of the car, on the right fender and on the right running-board. Gianello took the stand in his own behalf and testified that he was on his ranch at the time the robbery was committed; that immediately preceding his going to the ranch, where he arrived at about 11:50 in the morning, he had been at Vernon collecting garbage; that he knew Taylor but that he did not see him on the day of the robbery; that he did not drive a Ford car on that day and that he didn't know how to drive a Ford. With this array of evidence it is futile to assert that the jury was not justified in finding that Gianello aided and abetted Taylor in committing the robbery and that he did so with guilty knowledge.

[2] The remaining point made by appellant is that the trial court erred in giving a certain instruction to the jury, which we shorten by ellipsis, as follows: "If you believe from the evidence . . . that the defendant feloniously took . . . the property . . . as charged in the information, . . . or aided and abetted and assisted any other person or persons to so feloniously take . . . the property . . . as charged in the information, . . . then you should find the defendant guilty." It is contended that the giving of this instruction was error for the reason that it omits language telling the jury that, in order to convict, its members must have found that appellant knowingly and with criminal intent aided, abetted and assisted another person in taking the property which was the subject of the robbery. The point is without merit, as the court gave another instruction by which the jury was informed that for one person "to abet another person in the commission of a criminal offense, simply means, to knowingly and with criminal intent aid, promote, encourage, or instigate, by act or counsel, or by both act and counsel, the commission of such criminal offense."

Judgment and order affirmed.

Finlayson, P. J., and Craig, J., concurred.